Bernadette ASCHER

v.

Jose E. GUTIERREZ, M.D. a/k/a Joseph
E. Gutierrez, M.D., Appellant.

No. 75–1532.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 20, 1976.

Decided March 26, 1976.

William J. Donnelly, Jr., Washington, D.
C., with whom James A. Welch, Washington, D. C., was on the brief, for appellant.

Richard S. Paulson, Washington, D. C.,
with whom David J. Humphreys, Washington, D. C., and Monte M. Simpson, Chevy
Chase, Md., were on the brief, for appellee.

Before McGOWAN * and WILKEY, Circuit Judges, and ALBERT V. BRYAN,
Jr.,** United States District Judge for the
Eastern District of Virginia.

BRYAN, District Judge:

Defendant-appellant in this case is a physician specializing in the field of anesthesiology. He appeals from a judgment entered by the district court upon a jury verdict finding him guilty of malpractice and
awarding substantial damages.

The plaintiff, Mrs. Bernadette Ascher,
was admitted to the Columbia Hospital for

---

* *Circuit Judge* McGOWAN did not participate in
this decision.

** Sitting by designation pursuant to Title 28,
U.S.Code Section 292(d).

Women in Washington, D. C., on July 20, 1970, for a surgical procedure known as a "D and C." The surgery was scheduled for July 21, 1970. The appellant, Jose Gutierrez, was the scheduled anesthesiologist for the procedure. Following an injection by Gutierrez of sodium pentothal, the plaintiff developed a condition known as a laryngospasm. This is a spasm of certain throat muscles in the vocal cord area which prevents oxygen from getting into the lungs and blood stream. If allowed to persist for a sufficient length of time, the condition causes brain damage from lack of oxygen going to the brain. Attempts to "break" and relax the spasm, manually and through injections, were unsuccessful, and the plaintiff suffered severe and disabling brain damage.

The laryngospasm was established, without contradiction, as secondary to the injection of the sodium pentothal. No claim is made that appellant's care and treatment were other than proper up to the time the emergency developed.

While there are other issues set forth in his brief, at oral argument appellant pressed only his contention that there was insufficient evidence of the doctor's abandonment of his patient to submit that issue to the jury. We address only that issue here, because we conclude that the issue whether the "intubation"[1] was accomplished in a timely fashion was clearly one for the jury on conflicting evidence, and that none of the other issues, singly or combined, warrant disturbing the district court's judgment.

The jury was charged, correctly we think, and without objection as to its form, on the issue of abandonment as follows:

> The jury is instructed that once a physician enters into a professional relationship with a patient, he is not at liberty to terminate that relationship at will. That relationship will continue until it is ended by one of the following circumstances: (1) the patient's lack of need for further care; or (2) *the withdrawing physician*

*being replaced by an equally qualified physician.* Withdrawal from the case under any other circumstances constitutes a wrongful abandonment of the patient and if the patient suffers any injury as a proximate result of such wrongful abandonment, the physician is liable for it. (Emphasis supplied.)

It is that part of the instruction which is emphasized with which we deal here.

The evidence established that the laryngospasm began within two or three minutes of the initial injection of sodium pentothal at 12:55 p. m. As indicated, manual attempts to ventilate or oxygenate the plaintiff failed; relaxing drugs were injected; and finally an endotracheal tube was inserted down the patient's throat so that oxygen could be forced beyond the obstruction caused by the spasm, enabling the patient to be ventilated. Improvement was noted immediately, although the plaintiff continued to be cyanotic and hypotensive, and it developed that the deficiency in oxygen had been of sufficient duration to cause serious and disabling residual brain damage.

The length of time which elapsed during the efforts at resuscitation and before the intubation was effected is in dispute, but the jury could have found that the intubation was accomplished as late as 1:45 p. m., and perhaps later. If not accomplished until then, the jury could have found, based on the expert testimony before it, that Gutierrez was negligent in not providing adequate ventilation by intubation in a timely manner.

Gutierrez left the operating room at 1:30 p. m., upon request of another anesthesiologist, to attend another operation. It was the defendant's contention at trial that he did so only upon being replaced by an equally qualified physician. To support this contention testimony was presented that Dr. John A. O'Donnell, a qualified anesthesiologist, relieved Gutierrez at the time the latter left at 1:30, and in fact had been there since 12:55 in response to Gutierrez's

---

1. Intubation is the insertion of a hollow tube called an endotracheal tube between the vocal cords insuring a clear passage for oxygen and gases to the lungs.

call for assistance. This testimony was presented and corroborated in varying form by other witnesses. The plaintiff, on the other hand, contended that Dr. O'Donnell was not in the operating room at all during the period from about 12:57 to 1:30.

The operation on the plaintiff took place in Operating Room C. There was introduced in evidence, over defendant's objection, a hospital record of a patient who gave birth to a baby in another room, which is referred to in the testimony as "OB" at 12:43. This record showed that anesthesia was begun at 12:30; that the baby was born at 12:43; that the patient was taken from "OB" at 2:05; *and that O'Donnell was the anesthesiologist in "OB" during this procedure*. O'Donnell testified that he was never in "OB" after 12:00, but on the contrary he was in Operating Room A from approximately 12:30 until a little before 1:00, at which time he stepped out of Operating Room A for another purpose and was summoned to assist Gutierrez. Another hospital record, admitted in evidence over defendant's objection, indicated that a Dr. Park was the anesthesiologist attending an operation in Operating Room A during the period 12:35 to 1:15. O'Donnell, on the other hand, as indicated, testified that for a portion of this time he was in Operating Room A, and further testified that Dr. Park was not there when he was. This testimony and these documents, together with a prior inconsistent deposition statement by O'Donnell that Gutierrez had *not* left the operating room where the plaintiff was a patient, are sufficient in our view to put in issue the credibility of O'Donnell and his statement that he was present in the operating room with the plaintiff when he said he was. If O'Donnell were not present, then of course the defendant would not have been "replaced by an equally qualified physician" when he left the operating room at 1:30 and the jury could have concluded that he abandoned his patient.

Whether there was such an issue for the jury depends upon the admissibility of the two hospital records for their substantive content. Gutierrez concedes that one of the

"record[s] . . . on its face tended to indicate that he [O'Donnell] was administering anesthesia in obstetrics on the floor below to another patient during this period of time [12:57 to 1:30]." The authenticity of the records was not questioned. The objection to the words was that their content had been thoroughly refuted by contradicting evidence, both live and documentary. But whether this was so was a matter for the fact finder, in this case the jury. It has resolved that issue in the plaintiff's favor. The location of O'Donnell at the time in question, as established by the records, is not inherently incredible or contrary to human experience. Their weight, when contrasted with the weight of the defendant's evidence to the contrary, no matter how voluminous the latter, was for the jury to determine.

■ We conclude that the admission in evidence of the records was proper and that their substantive content warranted the jury's finding that O'Donnell was not in Operating Room C "replacing" Gutierrez when Gutierrez left at 1:30, and that consequently Gutierrez abandoned his patient.

■ Appellant further argues that even if it be concluded that he abandoned his patient, the plaintiff failed to produce any evidence that such abandonment was the proximate cause of her injuries. As indicated previously the jury could have concluded (1) that the plaintiff was not intubated, the remedy that finally relieved the emergency, until as late as 1:45; (2) that Gutierrez left the operating room at 1:30, a time when the patient was still *in extremis*; and (3) that Gutierrez was not replaced by an equally qualified physician when he, Gutierrez, left at 1:30. The jury could well have inferred from these findings that had Gutierrez remained in the operating room he or his replacement, had there been one, could have intubated the patient earlier, thereby reducing the ultimate injury sustained. Certainly under these circumstances a patient ought not be put in the position, once abandonment has been proved, of having to go further. The theory of abandonment presupposes the

duty on the part of the physician to remain with his patient until he can properly withdraw. And this is because it is his superior skill and knowledge to which the patient looks for relief. The doctor should not be heard to say—"even if I abandoned the patient, how do we know I could have helped her if I had stayed?" The patient counted on his best efforts; they might have reduced or eliminated the injuries; it will never be known if those efforts could have made any difference; and the reason for this is that Gutierrez's own conduct has rendered such an inquiry speculative. We reject the argument that there was insufficient proof of causation.

The judgment appealed from is

*Affirmed.*